UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DIMITRIOS LIAPIS,<br><br>    Applicant,<br><br>v.<br><br>Meta Platforms, Inc.,<br><br>    Proposed Subpoenaed Party. | Case No. 24-mc-80267-PHK<br><br>**ORDER GRANTING IN PART *EX PARTE* APPLICATION PURSUANT TO 28 U.S.C. § 1782 FOR AN ORDER DIRECTING DISCOVERY IN AID OF FOREIGN PROCEEDINGS**<br><br>Re: Dkt. 1 |

## INTRODUCTION

This matter is before the Court on the *ex parte* application of Dimitrios Liapis ("Liapis") for an order pursuant to 28 U.S.C. § 1782 authorizing service of a subpoena for discovery on Meta Platforms, Inc. ("Meta"). [Dkt. 1]. Meta has filed a response to Liapis's application, stating that it "takes no position on the issuance of the subpoena, but it reserves all rights and objections with respect to the subpoena if it does issue." [Dkt. 12 at 2]. Liapis and Meta have both consented to Magistrate Judge jurisdiction in this matter. *See* Dkts. 5, 10. Having carefully reviewed Liapis's application and all papers submitted in support thereof, as well as Meta's response to the application, the Court **GRANTS** the *ex parte* application on the terms and for the reasons set forth below.

## BACKGROUND

### A. The Australian Proceeding

Liapis seeks to serve a subpoena on Meta for documents and ESI for use in connection with a foreign criminal proceeding that is currently pending in the District Court of Queensland,

Criminal Jurisdiction, in Brisbane, Australia, styled as *The King v. Dimitrios Liapis*, Case No. 329/2021 ("Australia Proceeding"). *See* Dkt. 1 at 3; Dkt. 1-2 at 9-11; Dkt. 1-3 at ¶ 1.

Liapis, who is the defendant in the Australian Proceeding, stands accused of sexually assaulting the daughter of his former girlfriend when the victim was sixteen years old. [Dkt. 1 at 3]. On September 27, 2018, the alleged victim, S.F.,[1] filed a report with the Western Australia Police Force alleging that Liapis sexually assaulted her in July 2018, during a family vacation in Queensland, Australia. *Id.* at 5. As evidence of the alleged assault, S.F. provided the police with a screenshot of a message chain ("Message"), purportedly between herself and her then-boyfriend, regarding the incident. *Id.* The Message, a copy of which is attached to the instant application, reads, in pertinent part, as follows:

> But the other night he touched my tit n [sic] ass then got on top of me kiss [sic] me [sic] cheek then I push him off me I ran off locked myself in a room cried n [sic] couldn't sleep the [sic] all night n [sic] it keeps on replay every [expletive] min [sic] I don't know what to [expletive] do[.]

[Dkt. 1-3 at 44].

On August 12, 2019, the Australian Crown Prosecutor charged Liapis with four counts of unlawful and indecent assault, in violation of § 352(1)(a) of the Australian Criminal Code. *Id.* 3 ¶ 6. Each charge carries a maximum penalty of ten years of imprisonment. *Id.* Because Liapis's motion to stay the Australian proceedings was denied, trial is set to commence on June 2, 2025. [Dkt. 14 at 2-3].

The Message, which the Australian Crown Prosecutor has proffered as evidence that Liapis committed sexual assault, has apparently been a "hotly discussed piece of evidence" throughout the duration of the case. [Dkt. 1 at 6]. The Australian prosecuting authorities assert that (1) S.F. sent the Message, (2) at the time of the alleged assault, *i.e.,* "during the Queensland holidays in July 2018, and not after these holidays," and (3) she was talking about Liapis in the Message. *Id.* at 3-4.

---

[1] The victim S.F. was sixteen years old, and therefore a minor, at the time of the alleged assault in July 2018. She is now approximately twenty-two or twenty-three years old and no longer a minor. However, out of an excess of caution and out of regard for victim S.F.'s privacy concerns, the Court refers to the alleged victim by her initials only.

2

The prosecution has apparently stipulated that the Message was sent through Meta's Instagram direct messaging system. *Id.* at 3. The screenshot of the Message, which has no date or time stamps, shows that it was sent to an account with username "only_steezy_vandals." *See* Dkt. 1-3 at 44. The screenshotted Message does not identify the sending account.

In his § 1782 application to this Court, Liapis states that "the Message is being proffered by the prosecution to convict [him] of the crime of assault," notwithstanding the fact that: (1) the Message has not been authenticated, either by S.F. or by Meta; (2) neither the Australian police nor the prosecutor have "effectively or properly" attempted to authenticate the Message with information from Meta, either through a search warrant or subpoena; (3) the prosecution has not confirmed that the receiving account, *viz.,* "only_steezy_vandals," belonged to S.F.'s boyfriend at the time of the alleged assault; (4) no "original version of the Message with metadata or a date and time stamp" has been produced; and (5) the prosecution has not confirmed that S.F. actually sent the Message, because S.F. has represented to the Australian court that she "deleted the Message itself and changed phones" before the phone could be forensically imaged, and that she "has not been able to locate the Message from any Instagram accounts she currently has access to." [Dkt. 1 at 4].

Liapis states that he has attempted to obtain additional information regarding the Message, first through discovery in the Australian criminal proceeding, and later, through issuance of foreign subpoenas to Meta. *Id.* at 6-11. According to Liapis, S.F. has identified three different Instagram accounts that she may have used to send the Message (but no longer has access to), as well as two different email addresses that she may have used in connection with her Instagram account (but no longer has access to). *Id.* at 6. Liapis states that the Australian prosecuting authorities "have refused to attempt to authenticate the Message by requesting information from Meta" and have also represented that they "cannot obtain account details relating to [S.F.]'s Instagram accounts." *Id.* at 7.

On March 15, 2024, Liapis served an Australian subpoena on Meta seeking information and metadata regarding the Message. *Id.* at 8. On April 16, 2024, Meta responded to the foreign subpoena with numerous objections, including that Meta was not subject to Australian law; that

3

the subpoena was unnecessary, improper, and oppressive; that any disclosure would be limited to basic subscriber information and/or IP addresses so as to comply with the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701, *et seq.*; and that the subpoena was overly broad. *Id.* at 8-9.

On May 10, 2024, Liapis served a revised Australian subpoena on Meta, again seeking information regarding the Message. *Id.* at 9. On May 17, 2024, Meta served objections to the revised subpoena, asserting largely the same objections. *Id.* at 10. Liapis states that his counsel thereafter met and conferred with Meta's counsel "on numerous occasions" regarding the terms of a future proposed subpoena. *Id.* According to Liapis, "Meta remains firm that it will not respond to any Australian subpoena" based on jurisdictional objections. *Id.* at 11.

### B. The § 1782 Application

Liapis filed the instant § 1782 application on October 25, 2024. Liapis seeks an Order authorizing service of a subpoena for certain documents relating to the Message itself, as well as information regarding "whether the Australian Police or prosecutor attempted to obtain this information about the Message." *Id.* at 4. Liapis provided a copy of the proposed subpoena with his application. *See* Dkt. 1-2. The proposed subpoena requests that Meta produce, for the date range of July 1, 2018 through August 18, 2020, the following:

- "Certify and authenticate" the Message.
- Documents and ESI "sufficient to identify the header information for the Message, including the date and time stamp, the usernames for both the senders and recipients, any and all metadata and IP addresses used for [the Message], sufficient to show when [the Message] was sent."
- Date and time logs sufficient to show "when the direct Message was created by the Complainant's Accounts and the Recipient Account[.]"
- Date and time logs sufficient to show "when the direct Message was deleted by the Complainant's Accounts and the Recipient Account[.]"

*Id.* at 9-10.

The proposed subpoena further requests that Meta produce, for the date range of July 1, 2018 through the present, the following:

4

- "Any and all communications between Meta and Complainant's Accounts regarding deletion of Complainant's Accounts[.]"
- "Any and all requests by any third party to Meta for information about Complainant's Accounts or Recipient's Account, whether via formal legal process (subpoena, search warrant) or a request through Meta's law enforcement portal/Law Enforcement Online Request System[.]"
- "Any and all communications between Meta and Australian law enforcement, including but not limited to Queensland Police Service, Western Australia Police Force, Victoria Police, Department of Public Prosecutions or any U.S. law enforcement relating to the Complainant's Accounts or the Recipient Account."
- "Basic subscriber information for the Complainant's Accounts and Recipient's Account, including but not limited to: vanity, account closure date, if applicable; name and e-mail address(es) and/or telephone number(s) for an account at the time of production; and date, time, and IP address of registration and all login and logout events."

*Id.* at 10-11.

On October 29, 2024, this Court issued an Order instructing Liapis to serve a copy of his application on Meta. [Dkt. 4]. On November 19, 2024, the Parties consented to Magistrate Judge jurisdiction. *See* Dkts. 5, 10; *see also In re CPC Patent Techs. Pty. Ltd. v. Apple, Inc.*, 34 F.4th 801, 810 (9th Cir. 2022). That same day, Meta filed a response to Liapis's application, stating that it takes no position on the issuance of the subpoena, but reserves all rights and objections with respect to the subpoena if it does issue. [Dkt. 12].

## LEGAL STANDARD

"Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). The statute reads, in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter

> rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. . . . The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a).

"Section 1782's statutory language has been distilled to permit district courts to authorize discovery where three general requirements are satisfied: (1) the person from whom the discovery is sought 'resides or is found' in the district of the district court where the application is made; (2) the discovery is 'for use in a proceeding in a foreign or international tribunal'; and (3) the application is made by a foreign or international tribunal or 'any interested person.'" *Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019) (citing 28 U.S.C. § 1782(a)).

Even where the statutory requirements are met, a district court retains discretion to determine what discovery, if any, should be permitted. *Intel*, 542 U.S. at 264; *see Four Pillars Enters. Co. v. Avery Dennison Corp.*, 308 F.3d 1075, 1078 (9th Cir. 2002) ("Congress gave the federal district courts broad discretion to determine whether, and to what extent, to honor a request for assistance under 28 U.S.C. § 1782."). In exercising its discretion, a district court should consider the following factors: (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance"; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65.

A district court's discretion is to be exercised in view of § 1782's twin aims: "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Id.* at 252. There is no requirement that the

party seeking discovery establish that the information sought would be discoverable under the governing law in the foreign proceeding or that United States law would allow discovery in an analogous domestic proceeding. *Id.* at 247, 261-63. "Section 1782 is a provision for assistance to tribunals abroad. It does not direct United States courts to engage in comparative analysis to determine whether analogous proceedings exist here." *Id.* at 263.

## DISCUSSION

In light of the legal standards applicable to Liapis's § 1782 application, the Court first considers whether it has the authority to issue the requested subpoena and then determines whether discretionary factors favor its issuance.

### A. The Court has Authority to Grant the Requested Relief

As a threshold matter, this Court has authority to hear and decide the § 1782 application because Liapis and Meta have both consented to Magistrate Judge jurisdiction. *See* 28 U.S.C. § 636(c); *CPC Pat. Techs.*, 34 F.4th at 808; *Williams v. King*, 875 F.3d 500, 500 (9th Cir. 2017).

Because the Court has jurisdiction to rule on the application, the Court next analyzes whether Liapis's application satisfies each of the threshold statutory requirements of § 1782.

The statute first requires that the person from whom discovery is sought "resides or is found" in the district of the district court where the application is made. 28 U.S.C. § 1782(a); *Khrapunov*, 931 F.3d at 925. "A business is 'found' where it is incorporated or headquartered." *In re Al-Baldawi*, No. 5:22-mc-80329-EJD, 2023 WL 3603731, at *2 (N.D. Cal. May 23, 2023) (quoting *Illumina Cambridge, Ltd. v. Complete Genomics, Inc.*, No. 19-mc-80215-WHO (TSH), 2020 WL 820327, at *3 (N.D. Cal. Feb. 19, 2020)). Here, Meta's offices are headquartered in Menlo Park, California, which is located within the Northern District of California. *See* bizfile Online, Cal. Sec'y of State, https://bizfileonline.sos.ca.gov/search/business (search for "Meta Platforms, Inc." or file no. 2711108) (last visited on May 1, 2025) (Meta's "principal address" in Menlo Park); *see also* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Minor v. FedEx Office & Print Servs.*, 78 F. Supp. 3d 1021, 1028 (N.D. Cal. 2015) (taking judicial notice of record of administrative agencies

and publicly accessible websites). Accordingly, the first statutory factor under § 1782 is satisfied. *See In re Omori*, No. 5:23-mc-80195-EJD, 2023 WL 5957172, at *2 (N.D. Cal. Sept. 12, 2023) ("[T]he [§ 1782] Application satisfies the residence requirement because Meta is headquartered in and has its principal place of business in Menlo Park, California.").

The statute next requires that the discovery sought be "for use in a proceeding before a foreign tribunal." 28 U.S.C. § 1782(a); *Khrapunov*, 931 F.3d at 925. Here, Liapis seeks discovery for use in a criminal proceeding before the District Court of Queensland in Brisbane, Australia. Thus, the second statutory factor is satisfied. *See Intel*, 541 U.S. at 259 (observing that the legislative history of the statute reflect congressional intent to provide judicial assistance "whether the foreign or international proceeding or investigation is of a criminal, civil, administrative, or other nature"); *Super Vitaminas, S.A.*, No. 17-mc-80125-SVK, 2017 WL 5571037, at *2 (N.D. Cal. Nov. 20, 2017) (finding the second statutory requirement met where the applicant sought discovery for use in connection with an ongoing criminal prosecution by Guatemalan authorities).

Section 1782 finally requires that the discovery request be made by a foreign tribunal or interested person. 28 U.S.C. § 1782(a); *Khrapunov*, 931 F.3d at 925. As the defendant facing charges in the Australian criminal proceeding, Liapis qualifies as an "interested person" under the statute. Thus, the third statutory factor is satisfied. *See Akebia Therapeutics, Inc. v. FibroGen, Inc.*, 793 F.3d 1108, 1110-11 (9th Cir. 2015) (A party to foreign proceedings "has a 'reasonable interest' in obtaining judicial assistance and, therefore, may apply for judicial assistance pursuant to § 1782."); *Akimoto v. Apple Inc.*, No. 22-mc-80056-DMR, 2022 WL 1157496, at *2 (N.D. Cal. Apr. 19, 2022) ("Akimoto qualifies as an 'interested' party [under § 1782], since he is the defendant in the criminal proceeding[.]").

**B.     Discretionary Factors Weigh in Favor of Granting Liapis's Application**

Because the Court has determined that Liapis's § 1782 application satisfies the threshold requirements, the Court next analyzes whether the four discretionary factors set forth above support granting the instant *ex parte* application.

The first discretionary factor considers whether the "person from whom discovery is sought is a participant in the foreign proceeding." *Intel*, 542 U.S. at 247. "[W]hen the person

8

from whom discovery is sought is a participant in the foreign proceeding[,] . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Id.* at 264. This is because "[a] foreign tribunal has jurisdiction over those appearing before it and can itself order them to produce evidence." *Id.* By contrast, "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id.*; *see United States v. Meta Platforms, Inc.*, No. 23-mc-80249-PHK, 2023 WL 8438579, at *4 (N.D. Cal. Dec. 5, 2023) ("[T]he key issue is whether the material is obtainable through the foreign proceeding."). "Consequently, the first discretionary factor 'favors discovery against nonparticipants in foreign proceedings.'" *In re Alpine Partners, (BVI) L.P.*, 635 F. Supp. 3d 900, 910 (N.D. Cal. 2022) (quoting *In re Anahara*, No. 22-mc-80063, 2022 WL 783896, at *2 (N.D. Cal. Mar. 15, 2022)).

Here, Meta is not a party to the proceedings in Australia. Liapis represents that he would be unable to obtain the materials sought from Meta without a subpoena from this Court. Indeed, according to the application, Liapis has attempted to obtain materials from Meta using subpoenas issued in Australia, but Meta has objected to and resisted those attempts. [Dkt. 1 at 8-11]. Accordingly, this factor weighs in favor of granting Liapis's application. *See Akimoto*, 2022 WL 1157496, at *3 ("Here, Apple is not a party to the criminal proceedings in Japan. The first factor thus weighs in favor of granting leave to issue the subpoena.") (internal citation omitted).

The second discretionary factor is addressed to consideration of "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance." *Intel*, 542 U.S. at 264. This factor "focuses on whether the foreign tribunal is willing to consider the information sought." *In re Will Co.*, No. 21-mc-80211-JCS, 2021 WL 5322653, at *3 (N.D. Cal. Nov. 16, 2021) (quoting *In re Varian Med. Sys. Int'l AG*, No. 16-mc-80048-MEJ, 2016 WL 1161568, at *4 (N.D. Cal. Mar. 14, 2016)). "Where there is no evidence suggesting that foreign courts would be unreceptive to the requested discovery, the second discretionary factor weighs in favor of the application." *Id.* (citing *In re Med. Corp. H&S*, No. 19-mc-80107-SVK, 2019 WL

9

1  2299953, at *3 (N.D. Cal. May 30, 2019)).

2  Here, Liapis argues that the Australian court "will likely accept" the materials requested
3  from Meta "as evidence" in the underlying criminal proceeding. [Dkt. 1 at 18]. The Court finds
4  nothing within the present record suggesting that the Australian court would be unreceptive to the
5  discovery sought from Meta. Accordingly, the Court concludes that the second discretionary
6  factor weighs in favor of granting the instant *ex parte* application. *See In re Mishra*, No. 22-cv-
7  08923-BLF, 2022 WL 17905112, at *3-4 (N.D. Cal. Dec. 23, 2022) (finding the second
8  discretionary factor to weigh in favor of authorizing discovery, where the applicant represented
9  that "Australian courts are receptive to receiving discovery from the United States" and the court
10 was "not aware of any directive from Australia against the use of Section 1782 evidence"); *see
11 also Anahara*, 2022 WL 783896, at *3 ("Anahara's Japanese attorney states that Japanese courts
12 are receptive to this type of discovery obtained through the United States judicial system. There is
13 no evidence in the record to the contrary. The second factor therefore weighs in favor of the
14 application.") (internal citation omitted).

15 The third discretionary factor is directed to considering whether the request "conceals an
16 attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or
17 the United States." *Intel*, 542 U.S. at 265. "A perception that an applicant has side-stepped less-
18 than-favorable discovery rules by resorting immediately to § 1782 can be a factor in a court's
19 analysis." *Alpine Partners*, 635 F. Supp. 3d at 912 (citation omitted). "Absence of evidence of
20 attempted circumvention weighs in favor of an application." *Anahara*, 2022 WL 783896, at *3.

21 Here, Liapis states that he is "not aware of any restrictions on proof-gathering procedures
22 that would prohibit obtaining the requested discovery through this Application and the Subpoena."
23 [Dkt. 1 at 19]. Liapis states that the information that he seeks to obtain from Meta is "highly
24 relevant if not crucial" to his defense against pending criminal charges. *Id.* at 4. He states that the
25 Australian court would likely accept the materials into evidence. *Id.* at 18. The Court finds
26 nothing in the present record to suggest that Liapis is attempting to evade Australian discovery
27 rules, or any policy of Australia or the United States restricting such proof-gathering. Indeed,
28 Liapis cites several precedents indicating that discovery obtained under § 1782 has been granted in

support of proceedings in Commonwealth nations including especially Australia. *Id.* (citing *In re Futurecorp Int'l Pty Ltd.*, Case No. 12-mc-80267, 2012 WL 5818288, at *3 (N.D. Cal. Nov. 15, 2012) ("[T]he Australian court is receptive to the discovery sought[.]")). Accordingly, the Court finds that the third factor weighs in favor of granting Liapis's application. *See Mishra*, 2022 WL 17905112, at *4 ("Here, there is no reason to believe that Applicant is seeking to circumvent Australian evidence laws. Absent any evidence to the contrary, this factor weighs in favor of granting discovery.") (internal citation omitted).

The fourth discretionary factor is directed to examining whether the discovery request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. "Requests are unduly intrusive and burdensome where they are not narrowly tailored, request confidential information, and appear to be a broad 'fishing expedition' for irrelevant information." *In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016) (citation omitted). "[U]nduly intrusive or burdensome requests may be rejected or trimmed." *Intel*, 542 U.S. at 265.

"The proper scope of discovery arising out of a § 1782 application is generally determined by the Federal Rules of Civil Procedure." *Varian Med. Sys.*, 2016 WL 1161568, at *5 (citing *In re Letters Rogatory from Tokyo Dist. Prosecutor's Office*, 16 F.3d 1016, 1019 (9th Cir. 1994)). Federal Rule of Civil Procedure 26, in particular, provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Proportionality depends, in part, on "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

Liapis argues that his proposed subpoena requesting discovery from Meta is narrowly tailored, in that it seeks information pertaining only to "the date and time the Message was sent, as well as information about whether the Australian police or prosecutor attempted to obtain this information." [Dkt. 1 at 20]. Liapis states that the scope of discovery sought is restricted to "only those materials necessary to defend himself in the Australian Action, and . . . the requested documents are instrumental, if not essential, to serve that purpose." *Id.* Finally, Liapis argues that Meta would not be unduly burdened by the discovery request because "all the materials are likely stored electronically, and can be isolated and retrieved through automated technology." *Id.*

11

The Parties' briefing suggests that Meta may believe the scope of the proposed subpoena is overly broad and/or that complying with the subpoena would require Meta to violate the SCA. The Parties' submissions also indicate that there was some attempt to narrow the requests herein, based on meet and confers following Liapis's service of subpoenas issued under Australian law. However, it is unclear whether the scope of the document requests reflects agreement between the Parties as to relevance and proportionality.

Because Meta has reserved any objections to the scope of the subpoena for resolution after the § 1782 application is decided and thus does not request resolution of any such objections at this time, and because Liapis has represented that the requests have been narrowed and expressed a willingness to further narrow the requests, the Court is generally satisfied for purposes of authorizing the subpoena that the application should be granted. There is nothing in the present record leading this Court to conclude that the information sought is clearly privileged, for example.

However, because Meta has raised the issue of the applicability of the SCA, the Court notes that even if an applicant satisfies the § 1782 requirements, "the Court may not grant the application if granting the application would cause a violation of the Stored Communications Act ("SCA"). *In re Path Network, Inc.*, 703 F. Supp. 3d 1046, 1067(N.D. Cal. 2023). Here, the proposed subpoena seeks documents showing the dates, usernames, metadata, and IP addresses of the sender and receiver of the Message. [Dkt. 1-2 at 10]. To the extent that the proposed subpoena seeking these materials does not seek the contents of any communications associated with the accounts at issue, the proposed subpoena does not run afoul of the SCA. *See In re Path Network*, 703 F. Supp. 3d at 1067-73 (discussing prohibitions of the SCA); *London v. Does 1-4*, 279 F. App'x 513, 514-15 (9th Cir. 2008) (holding requests for names, addresses, telephone numbers, and IP addresses associated with five email accounts was "not unduly intrusive or burdensome because it seeks to gather only identifying information for the accounts . . . and not the content of any communications").

However, Request E(5) of the proposed subpoena explicitly seeks "[a]ny and all communications between Meta and Complainant's Accounts regarding deletion of Complainant's

Accounts." [Dkt. 1-2 at 10]. Similarly, Request E(6) is drafted broadly to seek "[a]ny and all requests by any third party" for information about the Complainant's and Recipient's Accounts. *Id.* at 10-11  And similarly, Request E(7) seeks "[a]ny and all communications" between Meta and various law enforcement entities. *Id.* at 11. As drafted, these three requests would at least potentially seek the contents of electronically stored communications in violation of the SCA. The SCA "prohibits electronic communication service providers from 'knowingly divulg[ing] to any person or entity the contents of a communication while in electronic storage by that service.'" *Path Network*, 703 F. Supp. 3d at 1067 (quoting *Obodai v. Indeed, Inc.*, No. 13-mc-80027-EMC, 2013 WL 1191267, at *2 (N.D. Cal. Mar. 21, 2013)) To the extent that these requests, *viz.,* E(5) to E(7), seek the contents of communications, the SCA precludes its disclosure. *See Rainey v. Facebook, Inc.*, 311 F. Supp. 3d 1101, 1115 (N.D. Cal. 2018) ("[T]he request seems to ask for communications between and among the eight individuals. The Stored Communications Act clearly bars that disclosure."). The Court therefore **DENIES IN PART** the § 1782 application to the extent the proposed subpoena seeks stored electronic communications in violation of the SCA.

However, to the extent Request E(5) to E(7) do not seek the content of stored electronic communications, they are not violative of the SCA. For example, Request E(6) seeks copies of "formal legal process (subpoena, search warrant) or a request through Meta's law enforcement portal/Law Enforcement Online Request System" discussing either Complainant's Account or Recipient's Account. [Dkt. 1-2 at 10-11]. These specific requests would not appear to implicate the SCA. And Requests E(5) and E(7) are broadly drafted and would include communications which are not stored electronic communications. Thus, the Court **GRANTS IN PART** the § 1782 application to the extent Request E(6) seeks copies of formal legal process or a request through Meta's law enforcement portal (Law Enforcement Online Request System) discussing either Complainant's Account or Recipient's Account, and to the extent Requests E(5) and E(7) do not seek stored electronic communications.

Further, because the Australian proceeding is set for trial on June 2, 2025, the Court notes that Request D(1) does not, as written, seek any documents but rather simply states "Certify and authenticate 'the message.'" [Dkt. 1-2 at 10]. The Court assumes that this is an inadvertent

13

1  typographical error, and that Request D(1) intends to seek "documents sufficient to certify and
2  authenticate 'the message.'" To that extent, Request D(1) would appear to be duplicative of
3  Requests D(2)-D(3). Because Request D(1) is unclear on its face and, as interpreted, appears to be
4  duplicative, the Court **DENIES WITHOUT PREJUDICE** the § 1782 application to the extent
5  the proposed subpoena includes Request D(1). Liapis is **GRANTED** leave to include a substitute
6  for Request D(1) seeking specifically identified documents sufficient to certify and authenticate
7  the Message, but only to the extent such substitute is not duplicative of Requests D(2) or D(3).

8        Based on the record presented, the Court concludes that the fourth discretionary factor
9  weighs in favor of authorizing service of the subpoena upon Meta, subject to the limitations
10 discussed herein. Accordingly, the Court finds that all four discretionary factors weigh in favor of
11 granting the instant *ex parte* application. The fact that Meta does not oppose the relief sought by
12 Liapis in his application (subject to reservation of rights to object to the underlying subpoena)
13 further supports the exercise of discretion to grant the application. Should Meta object to the
14 subpoena after formal issuance, the Parties are expected to and **ORDERED** to comply with the
15 Court's Standing Order on Discovery to attempt to resolve any disputes as to the subpoena prior to
16 filing a motion regarding any such disputes. To be clear, this Court's ruling does not preclude a
17 properly presented motion to enforce, quash, or modify the subpoena consistent with the Court's
18 Standing Order. The Parties are encouraged to engage in prompt, good faith efforts to resolve any
19 disputes, including presenting any proposed stipulations or proposed protective orders to the
20 Court.

21       Under § 1782, the Court has discretion to "prescribe the practice and procedure . . . for
22 taking the testimony or statement or producing the document or other thing." 28 U.S.C. § 1782(a).
23 The practice or procedure "may be in whole or part the practice and procedure of the foreign
24 country or the international tribunal." *Id.* Unless otherwise ordered by the Court, "the testimony
25 or statement shall be taken, and the document or other thing produced, in accordance with the
26 Federal Rules of Civil Procedure." *Id.*

27       Here, Liapis's application seeks issuance of a subpoena for documents and ESI. The
28 proposed subpoena attached to the application makes repeated reference to the procedures for the

14

production of such materials under Federal Rule of Civil Procedure 45. [Dkt. 1-2 at 2-4, 8]. Accordingly, the Court determines that the discovery authorized herein shall be taken and produced in accordance with the Federal Rules of Civil Procedure, and in particular, Rule 45. *See Application of Sumar*, 123 F.R.D. 467, 469-70 (S.D.N.Y. 1988) ("Respondents argue that the Federal Rules of Criminal Procedure should be applied to petitioner's efforts to compel discovery under Section 1782 because of the criminal nature of the action instituted by petitioner against Aida Sumar in Argentina. . . . The criminal nature of the Argentine investigation does not change the explicit direction of Section 1782. The Federal Rules of Civil Procedure will be applied to petitioner's motion to compel.") (internal citation omitted).

## CONCLUSION

Having considered all relevant factors and legal requirements, and in the exercise of the Court's discretion, the Court finds that **GRANTING IN PART** Liapis's § 1782 application is appropriate in this case.

Accordingly, **IT IS ORDERED THAT**:

1. The instant § 1782 application [Dkt. 1] is **GRANTED IN PART** as discussed herein. This Order is **WITHOUT PREJUDICE** to any argument or objection that may be asserted in a motion to quash or modify the subpoena by Meta.

2. Liapis is authorized to serve upon Meta a subpoena as modified and in compliance with the limitations set forth herein, and, where not limited by this Order, substantially in the form annexed as Exhibit B to his application [Dkt. 1-2]. Said subpoena shall comply with the requirements set forth in Federal Rule of Civil Procedure 45, including the geographic limits on location for production of documents in response thereto. Service of the subpoena shall be completed by no later than **May 10, 2025**. When serving the subpoena, Liapis shall attach to the subpoena a copy of this Order.

3. Meta shall have **fourteen (14) calendar days** from the date it receives the subpoena to serve objections, if any, to the subpoena. The Parties are **ORDERED** to promptly meet and confer to attempt to resolve or at least narrow any such disputes. With regard to any such dispute concerning the subpoena, should one arise, counsel for Liapis and Meta shall

review, be familiar with, and follow this Court's procedures for resolving discovery disputes as set forth in the undersigned's Standing Order for Discovery available on the Northern District of California's website.

4. If, after notice is provided and after the deadlines set forth herein have passed, the Parties have not filed any motions regarding disputes concerning the subpoena, Meta shall produce (pursuant to Rule 45) the requested documents and ESI, along with a notarized verification signed under penalty of perjury, to counsel for Liapis.

5. Within **five (5) calendar days** after Meta has produced the requested documents and information in compliance with the subpoena, the Parties shall file a joint status report, advising the Court as to the status of this case and whether any further issues relating to the subpoena remain pending.

6. As noted herein, the Court has referred to victim S.F. by her initials only in this Order. While S.F. is currently an adult, she was a minor at the time of the alleged assault. The Court is particularly concerned that victim S.F. is not a party to the instant proceeding and has not appeared through counsel. Public disclosure of personally identifying information of a victim of sexual abuse implicates privacy concerns. *See* Fed. R. Civ. P. 26(c)(1) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."). Here, there appears to be no reason why public filing in this Court of documents containing personally identifying information of victim S.F. is necessary or warranted, and protecting her from annoyance or embarrassment by redacting such information is the least restrictive measure to address any such concerns. Accordingly, the Court **ORDERS** counsel for Liapis to prepare and file, by no later than **May 30, 2025**, redacted versions of the Application [Dkt. 1], including supporting declarations and exhibits, which redact from those documents any personally identifying information of victim S.F. (including but not limited to her full name).

7. The Clerk is **DIRECTED TO SEAL** the Application [Dkt. 1] and its supporting declaration and exhibits, so that those materials are only accessible to counsel for Liapis,

16

counsel for Meta, and the Court.

**IT IS SO ORDERED.**

Dated:  May 5, 2025

PETER H. KANG
United States Magistrate Judge